# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NEHEMIAH MAYO and DAKOTA BURT, | )<br>)<br>) |
| Plaintiffs | )<br>) No. 18 CV 01342 |
| v. | )<br>) Judge John J. Tharp, Jr. |
| LASALLE COUNTY, BRIAN TOWNE, and Unknown State's Attorney Felony Enforcement Unit Officers, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Nehemiah Mayo and Dakota Burt allege that officers working for an investigative unit formed by former LaSalle County State's Attorney Brian Towne violated their constitutional rights and various state laws by stopping and searching their car without probable cause and using that unlawful stop as a basis to detain them pending trial. The defendants moved to dismiss, arguing that the complaint is barred by the statute of limitations and that, in any case, Mayo and Burt failed to state a claim entitling them to relief. Because the complaint establishes that the claims asserted are untimely and because the plaintiffs have failed to adequately establish their entitlement to relief, the complaint is dismissed. And as repleading cannot solve these problems, the dismissal is with prejudice.

## BACKGROUND

In December 2014, Nehemiah Mayo and Dakota Burt (two New Hampshire residents) were driving on Interstate 80 in LaSalle County, Illinois, when they were pulled over by officers working for the State's Attorney Felony Enforcement Unit (SAFE Unit). Am. Compl. ¶¶ 18, 20, 22. The SAFE Unit was created in 2011 by the County's former State's Attorney, Brian Towne,

pursuant to 55 ILCS 5/3-9005(b). That statute authorizes "[t]he State's Attorney of each county . . . to appoint . . . special investigators to . . . conduct investigations which assist the State's Attorney in the performance of his duties." *Id.* ¶¶ 2,3. The Unit's purported goal was to intervene in drug trafficking along Interstate 80 within LaSalle County, but, according to the plaintiffs, the Unit's only real assignment was to "pull over cars with out-of-state plates, make an arrest, and confiscate the vehicle and any money." *Id.* ¶¶ 4, 6.

At the time of the stop, the officers told Mayo (the driver) that they pulled him over for failing to use his headlights in bad weather. *Id.* ¶ 22. Under the Illinois vehicle code, however, the weather conditions did not require the use of headlights and, in any case, Mayo's vehicle was equipped with automatic headlights that were always on. *Id.* ¶¶ 23, 24. The officers knew headlights were not necessary at the time of the stop but nevertheless "stopped Mr. Mayo's vehicle because it had New Hampshire license plates." *Id.* ¶¶ 25, 27. The officers then asked Mayo to get out of the car, at which point they handcuffed him and placed him under arrest. *Id.* ¶ 29. Next, the officers had a dog search the outside of the vehicle. When the dog did not alert to anything, an officer threw a tennis ball at the car. *Id.* ¶¶ 30, 31, 32. This got the dog's attention, which the officers deemed an "alert," and on that basis they proceeded to search the trunk of the vehicle. *Id.* ¶¶ 32, 33. In the trunk, the officers found "what they believed to be marijuana" and arrested both Mayo and Burt for unlawful possession of cannabis with intent to deliver. *Id.* ¶¶ 33, 36.

At the plaintiffs' pretrial detention hearing, defendant Towne allegedly "misled" the judge with respect to the existence of probable cause for the search and seizure, but the complaint does not describe how he did so. *Id.* ¶ 59. At the defendants behest, the judge set bond at $2,000,000.00. Unable to pay, Mayo and Burt were detained in the LaSalle County jail for the next six months. *Id.* ¶ 45.

In June 2015, while Mayo and Burt were still in confinement, the Illinois Appellate Court handed down its decision in *People v. Ringland*, 2015 IL App (3d) 130523, which held that the SAFE Unit exceeded the scope of the State's Attorney's investigative power under 55 ILCS 5/2-9005(b) and affirmed the trial court's suppression of evidence in a felony drug case on the grounds that the SAFE officer who seized the evidence lacked the authority to conduct the stop. Following *Ringland*, Mayo and Burt were released from custody on their own recognizance on June 11, 2015. Am. Compl. ¶ 43. Two years later in June 2017, the Illinois Supreme Court upheld the *Ringland* decision. *People v. Ringland*, 2017 IL 119484 (Ill. 2017). The charges against Mayo and Burt were formally dismissed on September 14, 2017. *Id.* ¶¶ 13, 44.

A few months before *Ringland* was affirmed, a class action was filed against Towne and LaSalle County on behalf of all persons detained by the SAFE Unit; the suit was later dismissed as untimely in March 2018.[1] One month before the dismissal of that suit, on February 22, 2018, Mayo and Burt filed this complaint against Towne, LaSalle County, and unknown SAFE officers, asserting various constitutional and state violations. *Id.* ¶¶ 48-98. Towne and LaSalle County separately moved to dismiss the complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

## DISCUSSION

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the complaint's factual

---

[1] *See Larson v. LaSalle County.*, No. 17-cv-04210, 2018 WL 1156204 (N.D. Ill. Mar. 5, 2018).

content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court assumes the truth of all factual allegations and "constru[es] all inferences in favor of the plaintiff" when evaluating a motion to dismiss. *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 634 (7th Cir. 2012). In contrast, when the complaint alleges legal conclusions or "[t]hreadbare recitals of the elements of a cause of action," those allegations do not benefit from an assumption of truth. *Iqbal* at 678. It is also worth noting that Rule 12(b)(6) permits the dismissal of claims, not legal theories. And it is well established that a complaint need not identify the specific legal theory on which the plaintiff intends to proceed. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[A] complaint need not plead legal theories."). Instead, a complaint need only set forth a "short and plaint statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)). A claim should be dismissed pursuant to Rule 12(b)(6), then, only if it could not succeed under any legal theory.

The plaintiffs' complaint sets forth 47 paragraphs of factual allegations spanning three major "claims" or sets of facts: the plaintiffs' initial seizure and search, their subsequent arrest and pretrial detention, and their eventual release on bond. It then sets forth various legal theories about those events in eight overlapping counts. The first four counts deal with alleged constitutional violations: Counts I and II allege that the stop, search, arrest, and detention violated the Fourth Amendment. Count III alleges that the plaintiffs' pretrial detention and subsequent release on bond violated their constitutional right to travel freely. Count IV seeks to hold LaSalle County responsible for these alleged constitutional violations under a *Monell* theory of liability. As for state law causes of action, Count V alleges that defendant Towne abused the legal process by effectuating a baseless arrest and pressuring the plaintiffs to agree to forfeiture in order to fund the department and pay for personal expenses, and Count VI alleges that Towne maliciously

4

prosecuted the plaintiffs. The remaining counts do not assert additional causes of action but seek restitution for unjust enrichment (Count VII) and indemnification on the part of LaSalle County for violations committed by Towne and the unnamed SAFE Unit officers (Count VIII).

The plaintiffs acknowledge in their response brief that their claim arising from the initial search and seizure accrued at the time of the search and therefore expired before they filed this suit. *See* Pls.' Resp. Mot. Dismiss 4, ECF No. 24; *see also Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016) (claim for unlawful vehicle search accrued at the time of the search). Because they do not argue that the statute of limitations for that claim should be tolled, the Court dismisses it as time barred. Accordingly, the Court turns first to the plaintiffs' false arrest/pretrial detention claim.[2]

## I. Pretrial Detention: Fourth Amendment (Count II)

Mayo and Burt argue that they were arrested and detained pending trial in violation of their Fourth Amendment right to remain free of unreasonable governmental seizures because the SAFE Unit officers lacked probable cause to arrest them and the judge was misled as to probable cause at their pretrial detention hearing. The defendants argue that the claim is time barred and, in any case, fails to adequately allege facts demonstrating that the plaintiffs are entitled to relief. The Court agrees with the defendants in both respects.

---

[2] The parties dispute the propriety of including a "false arrest" claim in the same count as a "pretrial detention" claim. This is much ado about nothing. Federal Rule of Civil Procedure 10(b) provides that if it would promote clarity, a claim founded on a separate transaction or occurrence "must be stated in a separate count." Clarity does not require such separation in this instance, particularly given the Seventh Circuit's decision in *Manuel v. City of Joliet, Illinois*, 903 F.3d 667, 669 (7th Cir. 2018), discussed *infra*, which treated "pre-legal process" detention following a false arrest and "post-legal process" pretrial detention claims as one continuing wrong. *Id.* ("When a wrong is ongoing rather than discrete, the period of limitations does not commence until the wrong ends."). To the extent that the plaintiffs challenge both periods of detention, then, the Court addressees them together.

A. **Statute of Limitations**

Dismissal on statute of limitations grounds under Federal Rule of Civil Procedure 12(b)(6) is warranted "if the complaint contains everything necessary to establish that the claim is untimely." *Collins v. Village of Palatine*, 875 F.3d 839, 842 (7th Cir. 2017). Mayo and Burt's complaint invokes 42 U.S.C. § 1983, which makes state actors liable for actions taken under the color of law that violate the Constitution or other federal law. The statute of limitations for § 1983 actions is governed by state law. *Regains v. City of Chicago*, 918 F.3d 529, 533 (7th Cir. 2019) ("[W]e look to the law of the state in which the personal injury occurred to determine the length of the statute of limitations."). The parties agree that in Illinois, the governing statutory period is two years. When the statute of limitations begins to run, on the other hand, "is a question of federal law that is ***not*** resolved by reference to state law." *Id.* (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)) (emphasis in the original). Mayo and Burt argue that the clock did not start ticking on their pretrial detention claim until the charges against them were dropped in September 2017. If they are right, their suit (which was filed in June 2018) is timely. In contrast, the defendants argue that the clock began running upon the plaintiffs' release from detention on June 11, 2015, making their claim untimely.

In *Manuel v. City of Joliet* (*Manuel I*) the Supreme Court held that "the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." 137 S. Ct. 911, 920 (2017).[3] The Court then remanded the case back to the Seventh Circuit to decide when a

---

[3] Following *Manuel I*, the Seventh Circuit has held that the Fourth Amendment is the **exclusive** ground for a claim of unlawful pretrial detention, even when based on allegations of fabrication of evidence. *See Lewis v. City of Chicago*, 914 F.3d 472, 478 (7th Cir. 2019) (overruling *Hurt v. Wise*, 880 F.3d 831 (7th Cir. 2018)), which had held that fabrication of evidence allegations give rise to a due process claim in addition to a Fourth Amendment claim); *Manuel II*, 903 F.3d at 669-70 ("There is only a Fourth Amendment claim"). In *McDonough v. Smith*, 139 S. Ct. 2149 (2019), however, the Supreme Court addressed the question of the accrual date for a pretrial due

pretrial detention claim accrues. The Seventh Circuit subsequently explained that "[b]ecause the wrong is the detention rather than the existence of criminal charges, the period of limitations also should depend on the dates of the detention." *Manuel v. City of Joliet* (*Manuel II*), 903 F.3d 667, 670 (2018). *See id.* ("The problem is the wrongful custody. There is no such thing as a constitutional right not to be prosecuted without probable cause. But there is a constitutional right not to be held in custody without probable cause."). Accordingly, the court held that the plaintiff's pretrial detention claim accrued on the date he was released from custody. *Id.* That holding would appear to definitively resolve the issue presented in this case. Indeed, the Seventh Circuit specifically rejected the argument that a pretrial detention claim is analogous to common law malicious prosecution such that it accrues only when the plaintiff has prevailed in the criminal case. *See id.* at 669 ("[Manuel] maintains that the clock started . . . when his position was vindicated by dismissal of the prosecution. We do not accept [this] approach.").

The plaintiffs maintain that the fact that the charges against Manuel had been dropped the day ***before*** he was released from custody distinguishes that case from this one, where the charges against Mayo and Burt remained pending for several months after their release. This argument is inconsistent with the Seventh Circuit's holding in *Manuel II*, which "held that a Fourth Amendment claim for unlawful pretrial detention accrues when the ***detention*** ends, ***not*** when the ***prosecution*** ends." *Mitchell v. City of Elgin*, 912 F.3d 1012, 1015 (7th Cir. 2019) (describing

---

process claim based on allegations of fabrication of evidence and involving pretrial restrictions on liberty. The Court assumed without deciding that the framing of the claim as implicating the Due Process Clause was appropriate. *Id*. at 2155. That assumption seems to cast some doubt on the Seventh Circuit's view that *Manuel I* foreclosed grounding a claim of pretrial restriction of liberty based on the use of fabricated evidence on the Due Process Clause in addition to the Fourth Amendment. But the plaintiffs have not defended their complaint by asserting that they have a fabrication of evidence due process claim and even if they had, this Court could not disregard the Seventh Circuit's interpretation of *Manuel I* based on the Court's mere assumption—rather than holding—that such a claim is viable.

*Manuel II*'s holding). The plaintiffs nevertheless maintain that *Heck v Humphrey*, 512 U.S. 477 (1994), barred them from bringing an unlawful detention claim while charges were still pending against them. In *Heck*, the Supreme Court held that "§ 1983 cannot be used to obtain damages for custody based on a criminal conviction—not until the conviction has been set aside by the judiciary or an executive pardon." *Manuel II*, 903 F.3d at 670 (discussing *Heck*). That proposition is of no help to the plaintiffs, because the *Heck* tolling doctrine applies only where success on the claim "would necessarily imply" that the conviction was invalid. *Heck,* 512 U.S. at 487. *Heck* poses no impediment to asserting a § 1983 claim while charges are pending, or even following a conviction, where success on the claim is not inherently inconsistent with the validity of the state court charges.

That is the case with respect to the plaintiffs' unlawful detention claim. A suit challenging the lawfulness of the plaintiffs' pretrial detention would not be inherently inconsistent with the prosecution of, or conviction on, the drug trafficking charges that were brought against them. Success on a challenge to the lawfulness of their detention would require a determination that there was no probable cause for the detention, and such a finding would imply the invalidity of the state court order authorizing the detention. But a suit challenging the lawfulness of the detention under the Fourth Amendment does not necessarily impugn the propriety of continuing to prosecute the charges that remain pending. Even in a case where it was discovered that probable cause to detain had been lacking, there might otherwise have been developed evidence sufficient to establish probable cause to support the charges going forward. But more fundamentally, as the Seventh Circuit has repeatedly held, lack of probable cause does not preclude a prosecution from going forward: "there is no such thing as a constitutional right not to be prosecuted without probable cause." *Manuel II*, 903 F.3d at 670. For that reason, the Seventh Circuit expressly rejected Manuel's contention that a Fourth Amendment pretrial detention claim accrues only when the

8

plaintiff's position regarding the charges has been vindicated. The wrong addressed by a Fourth Amendment claim is wrongful detention; a Fourth Amendment claim therefore accrues when the wrongful detention ends, even if the prosecution continues.

Relatedly, in *Wallace v. Kato*, 549 U.S. 384, 393 (2007), the Supreme Court held that *Heck* applied only to convicted or sentenced plaintiffs, not to situations where an action would impugn an ***anticipated*** conviction. *Id.* ("[T]he *Heck* rule for deferred accrual is called into play only when there exists a conviction or sentence that has ***not*** been . . . invalidated.") (internal quotations omitted) (emphasis in original). The Court clarified that false arrest claims can be filed while criminal charges are still pending and that district courts can avoid the issue of parallel litigation by staying the civil action until the criminal charges are resolved. At that point, the court can decide if *Heck* requires dismissal of the civil action.[4] *Id.* at 393-94. Read together, *Wallace* and *Manuel II* stand for the proposition that the statute of limitations on a pretrial detention claim begins running as soon as the plaintiff is released from custody, regardless of whether criminal charges remain pending.[5]

---

[4] The *Wallace* Court explained that a plaintiff who files a timely § 1983 action which is later dismissed pursuant to *Heck* following the plaintiff's conviction is not barred on statute of limitations grounds from re-filing the case after obtaining a reversal of that conviction. The Court did not decide how much time a plaintiff would have to do so. *Wallace v. Kato*, 549 U.S. 384, 395 n.4 (2007).

[5] The Supreme Court's holding in *McDonough* again bears noting. In *McDonough*, the Court held that that *Heck **does*** apply to toll the accrual date of a due process claim for fabrication of evidence (assuming such a claim exists) until termination of the charges in the civil plaintiff/criminal defendant's favor because until that time, a fabrication of evidence claim impugns the integrity of the prosecution or conviction. That is understandable; as the Seventh Circuit observed in *Lewis*, a conviction "premised on deliberately fabricated evidence will always violate the defendant's right to due process." 914 F.3d at 479. Pursuing such a claim before a criminal proceeding has been terminated in a manner consistent with the claim would contravene *Heck*'s principle that civil actions are not the appropriate means for contesting the validity of a criminal prosecution or conviction. But *McDonough*'s holding has no bearing here, because Mayo and Burt, like the plaintiffs in *Wallace* and unlike the plaintiffs in *McDonough*, challenge the

9

Mayo and Burt also argue their claims could not be filed until the charges against them were dropped because they might have been reincarcerated. But according to *Manuel II*, the original wrong ended once they were released from detention. *Manuel II*, 903 F.3d at 670 ("The wrong of detention without probable cause continues for the duration of the detention."). Reincarceration may have constituted a **new** Fourth Amendment wrong but would not have extended the original wrong. The Court therefore finds that the claim for unlawful pretrial detention accrued on June 11, 2015 when the plaintiffs were released from custody.

Finally, the Court notes that the Seventh Circuit has recently suggested that some restrictions imposed as conditions of pretrial release may constitute seizures for purposes of the Fourth Amendment, *Mitchell v. City of Elgin*, 912 F.3d 1012, 1016 (7th Cir. 2019), and that a Fourth Amendment claim for detention without probable cause may therefore accrue at the time those restrictions are terminated. *Knox v. Curtis*, __ Fed. Appx. __ (7th Cir. 2019). The plaintiffs do not make such an argument here, nor do not allege any facts (beyond a conclusory allegation that their ability to travel while on bond was restricted) which would suggest that they were in fact "seized" during that time. In any case, a docket entry from the plaintiffs' criminal case dated 6/19/2015 shows that when the plaintiffs were released from custody, the court allowed them to travel back to New Hampshire immediately. The only restriction placed on them was a requirement that they appear at a future date. Ex. A to Def. Towne's Mot. Dismiss 3, ECF No. 15-1.[6] This Court is unwilling to conclude that this obligation constitutes a seizure for Fourth Amendment

---

validity of their detention on Fourth Amendment grounds; they do not challenge the validity of a subsequent prosecution in terms of Due Process or assert a fabrication of evidence claim.

[6] Mayo and Burt dispute the propriety of considering extrinsic material in a motion to dismiss, but it is well established that district courts may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).

purposes. A requirement to appear somewhere simply does not fit within the Supreme Court's test for whether a seizure has occurred, which looks to whether a reasonable person would have believed that he was free to leave. *Brendlin v. California*, 551 U.S. 249, 254–55 (2007). *See also Mitchell*, 912 F.3d at 1017 (expressing misgivings about construing an obligation to appear in court as a seizure for Fourth Amendment purposes).[7] Accordingly, the clock on Mayo and Burt's pretrial detention claim started running when they were released from physical custody in June 2015.

B. *Larson*

Perhaps anticipating this outcome, the plaintiffs also contend that the filing of *Larson v. LaSalle*, No. 17-cv-04210, 2018 WL 1156204 (N.D. Ill. Mar. 5, 2018), a purported class action asserting § 1983 claims against LaSalle County and SAFE Unit officers for unreasonable searches and seizures, tolled the statute of limitations on their pretrial detention claims. *Larson* was filed on June 2, 2017, nine days before Mayo and Burt's pretrial detention claim expired; it was dismissed on March 5, 2018, approximately two weeks after Mayo and Burt filed this suit. In support, the plaintiffs point to *American Pipe & Construction Company v. Utah*, in which the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. 538, 554 (1974). *See also Crown, Cork & Seal Company v. Parker*, 462 U.S. 345, 350 (1983) (clarifying that *American Pipe* tolling applies to the filing of

---

[7] The court entries in the docket exhibit also show that the plaintiffs were subsequently represented by counsel and waived personal appearance, demonstrating that even this minimum restriction did not restrict their freedom to travel or rise to the level of a seizure.

individual suits in addition to intervention after the denial of class certification). The doctrine, however, does not apply here, for at least two reasons.

First, Mayo and Burt's pretrial detention claim was not encompassed by the *Larson* class action because the plaintiff in *Larson* challenged only her traffic stop and vehicle search—she did not allege that she was subject to any period of unlawful detention beyond the initial seizure of the traffic stop.[8] *Larson*, 2018 WL 1156204 at *2. And second, *Larson* itself was dismissed as untimely. *Id.* at *6. The defendants contend that the *American Pipe* tolling rule applies only to "timely filed" class actions and therefore forecloses reliance on *Larson*. None of the parties cite any cases which discuss the tolling effect of a would-be class action that is dismissed as untimely, and the Court has not located any, but the policy considerations discussed in *American Pipe* support the defendants' argument. There, the Court explained that when a class representative files suit "within the period set by the statute of limitations," the defendants are put on notice of the subject matter and size of the prospective litigation such that there is no resulting unfairness when an otherwise untimely individual suit is filed after class status is lost. *Am. Pipe & Const. Co.* 414 U.S. at 555. But here, the initial class complaint was ***itself*** untimely. The policies of "ensuring essential fairness to defendants and of barring a plaintiff who has slept on his rights" are not furthered by allowing one plaintiff, whose claims are already time-barred, to extend the limitations period on the claims of untold numbers of other putative class members.[9]

---

[8] As mentioned earlier, the plaintiffs do not argue that the class action tolled their unreasonable stop and search claim. Nor would it—*Larson* was filed after that claim expired, meaning there would be nothing left for it to toll.

[9] The defendants also argue that Mayo and Burt were not on notice of the *Larson* class action and therefore could not have relied on it. Indeed, the plaintiffs filed their individual suit before the *Larson* action was dismissed. Circuits are split, however, on whether individuals who bring suits during the pendency of a class action are entitled to class action tolling. *Compare, e.g., Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 569 (6th Cir. 2005) (finding that the purposes of *American Pipe* tolling are not furthered when plaintiffs file independent actions before

Because *Larson* did not toll the statute of limitations for the plaintiffs' pretrial detention claim, their filing of the complaint more than two years after they were released from custody rendered the claim untimely.

**C. Failure to State a Claim**

Putting to one side these timeliness issues, the Court also concludes that the plaintiffs have failed to state a claim for unlawful pretrial detention. As the Seventh Circuit explained in *Manuel II*, there is a constitutional right to not be held in custody without probable cause that is governed by the Fourth Amendment. 903 F.3d at 670. Of course, the existence of probable cause is an absolute defense to § 1983 claims alleging unreasonable seizures. *Norris v. Serrato*, 761 Fed. Appx. 612, 615 (7th Cir. 2019), *reh'g denied* (Mar. 21, 2019). Mayo and Burt's complaint establishes the existence of probable cause for their arrest and detention, so their claim must be dismissed. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (explaining that a party may "plead itself out of court" by pleading facts that establish an impenetrable defense to its claims).

Although the complaint attempts to artfully avoid an admission that there was marijuana in the trunk of the car (which would, of course, establish probable cause for the plaintiffs' arrest and pretrial detention), the allegations effectively establish the point. First, the plaintiffs allege that when the officers searched the trunk of their vehicle, they "claimed to find what they believed to

---

decision on the issue of class certification, but are when plaintiffs delay until the certification issue has been decided) *with In re Worldcom Sec. Litig.*, 496 F.3d 245, 254-56 (2d Cir. 2007) (explaining that *American Pipe* tolling was created to protect class members from being forced to file individual suits and that it applies until such time as they cease to be members of the asserted class, regardless of whether they file individual actions prior to a class certification decision). The Seventh Circuit has not weighed in on the issue. Regardless, because the plaintiffs' claim is not encompassed by the *Larson* class action and because *Larson* was untimely, the Court need not resolve the issue here.

be marijuana, despite being unable to see the contents of the trunk." Am. Compl. ¶ 33. Neither the complaint nor the plaintiffs' brief, however, explains why the officers could not see the contents of the trunk while searching it. Nor do they allege that the officers in fact found something other than marijuana, as they claimed, or that the trunk was empty. Further, the plaintiffs argue that the defendants falsely told the judge at the pretrial detention hearing that "they had cause to stop the Plaintiffs and that a trained dog signaled the presence of narcotics," Pls.' Resp. Mot. Dismiss at 12, but they do not argue that the defendants misled the judge about the results of the search. The complaint, in other words, alleges that the officers claimed to have found marijuana in the trunk and alleges no facts that plausibly suggest that this claim was false.

More tellingly, the plaintiffs also alleged in their complaint that they "did not know they were wrongfully searched, seized, and imprisoned until the Illinois Supreme Court ruled that the LaSalle County State's Attorney's actions were improper." Am. Compl. ¶ 46. That averment compels the conclusion that the officers did in fact seize marijuana from the vehicle and therefore had probable cause to arrest and detain the plaintiffs. Had the plaintiffs *not* had marijuana in the vehicle, they would have known that their arrest and subsequent pretrial detention on drug trafficking charges were unreasonable at the time they occurred, long before the SAFE unit had been declared unlawful.

The fact that the defendants allegedly lacked probable cause for the initial stop and search does not save their claim. As the defendants explain, there is no "fruit of the poisonous tree" doctrine in claims brought pursuant to § 1983. *See Vaugh v. Chapman*, 662 Fed. Appx. 464, 467 (7th Cir. 2016) ("The exclusionary rule does not apply in a § 1983 suit against police officers."); *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999) (fruit of the poisonous tree doctrine cannot link an unreasonable seizure and search to § 1983 plaintiff's conviction). In other words,

14

even accepting that the SAFE Unit officers lacked probable cause for the initial stop and search, the results of that search provided the necessary probable cause for the subsequent period of detention. *See Vaughn*, 662 Fed. Appx. at 467 ("[R]egardless of whether Troopers Chapman and Howell had justification for searching the trunk of the car that Vaughn was driving, their discovery established probable cause for the charge . . . ."); *Williams v. Carroll*, 2010 WL 5463362 at *3-4 (N.D. Ill. 2010) (explaining that the lack of probable cause to stop and search does not vitiate the probable cause to arrest). Because the defendants had probable cause for the initial arrest, Mayo and Burt cannot state a claim for unreasonable pretrial detention or release on bond.

## II. Pretrial Detention and Release on Bond: Right to Travel (Count III)

In addition to their Fourth Amendment theory, Mayo and Burt allege that they were denied their constitutional right to interstate travel by the imposition of conditions on their pretrial release. The right to travel encompasses, among other things, "the right of a citizen of one State to enter and to leave another State." *Saenz v. Roe*, 526 U.S. 489, 501 (1999).[10] The defendants argue that this theory is also time barred. Although not from within this circuit, *Norwood v. City of Mendenhall*, No. 3:13cv580-HSO-RHW, 2015 WL 11112504, *6 (S.D. Miss. 2015), *aff'd* 630 Fed. Appx. 245 (5th Cir. 2015) is instructive here. There, the court found that the plaintiffs' right to travel claim accrued at the same time their Fourth Amendment claim accrued—when they were

---

[10] The right to travel also encompasses "the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second state." *Saenz v. Roe*, 526 U.S. 489, 501 (1999). The plaintiffs appear to invoke this component of the right to travel when they allege that the defendants stopped and searched them because of their out-of-state license plate, *see* Am. Compl. ¶ 64, but they do not discuss the allegedly discriminatory treatment in their briefs. In any case, the Court has already concluded (and the plaintiffs do not dispute) that a claim premised on the initial stop and seizure is untimely under the Fourth Amendment; there is no basis for concluding that the same claim accrues at a different time when asserted under a right to travel theory. *See Moore v. Vagnini*, 673 Fed. Appx. 584, 586 (7th Cir. 2017) (explaining that a plaintiff need not know under what legal theory he had a claim to know that he had suffered harm such that the statute of limitations in a § 1983 action was triggered).

15

released from custody with no further restrictions. *Id.* As Mayo and Burt note, however, the *Norwood* court found nothing in the record to suggest that the *Norwood* plaintiffs were subject to travel restrictions after they were released from detention. In contrast, the complaint at issue here alleges that the infringement on the plaintiffs' right to travel "continued until the charges were dropped." Am. Compl. ¶ 67. But as already discussed, the bond restrictions placed on Mayo and Burt permitted them to leave the state of Illinois immediately and imposed no travel restrictions.[11]

Further, even if the plaintiffs' right to travel theory accrued at a later date than their Fourth Amendment theory (*i.e.,* even if the bond conditions had in fact restricted their ability to travel), they have failed to state a claim. Detention supported by probable cause and the imposition of subsequent bond conditions does not violate the detainee's right to travel merely because it prevents him from leaving the state. *See Jones v. Helms*, 452 U.S. 412, 419 (1981) (explaining that a state may prevent a citizen from leaving without violating their fundamental right to interstate travel where probable cause justifies the detention).

For these reasons, the plaintiffs' constitutional claims may not proceed under any of the legal theories they have advanced. And because "there can be no municipal liability based on an official policy under *Monell* if the policy did not result in a violation of [a plaintiff's] constitutional rights," *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007), the plaintiffs' *Monell* theory of liability also fails.

### III.  State Law Claims

The Court turns next to the plaintiffs' state law claims, over which it has original jurisdiction pursuant to 28 U.S.C. § 1332. In Count V, Mayo and Burt advance an Illinois abuse

---

[11] Plaintiffs' argue, as before, that the *Larson* class action tolled the statute of limitations for their right to travel claim. The rationale detailed earlier explaining why *Larson* did not toll the plaintiffs' pretrial detention claim under the Fourth Amendment is equally applicable here.

of process theory alleging that the defendants used the legal process to extort and intimidate them. In Illinois, the statute of limitations for civil suits against local governmental entities and their employees is one year, 745 ILCS 10/8-101(a), and begins to run in abuse of process actions "from the date that the last act giving rise to the cause of action has accrued." *Vaughn*, 662 Fed. Appx. at 468 (citing *Withall v. Capitol Fed. Sav. of Am.*, 155 Ill. App. 3d 537, 544, 508 N.E.2d 363, 367 (1st Dist. 1987)). Although Mayo and Burt argue that the abuse of process continued until the charges against them were dismissed, they do not allege in their complaint any improper acts taken by the defendants after they ensured that the plaintiffs would be unable to post bond and used the jail conditions to pressure them into pleading guilty. The face of the complaint therefore establishes that, at the very latest, Mayo and Burt's abuse of process claim accrued when they were released from detention, at which time their bond was reduced to $0. Because they filed this action more than a year later, it is too late.

Count VI advances a state law malicious prosecution theory. Malicious prosecution claims do not accrue until the criminal proceedings are terminated in the plaintiff's favor, *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 99, 820 N.E.2d 455, 459 (2004), but this theory nevertheless fails for the same reason that the plaintiffs failed to state a claim for unlawful pretrial detention: the complaint establishes that the defendants had probable cause to initiate criminal proceedings. *See Martinez v. City of Chicago*, 900 F.3d 838, 849 (7th Cir. 2018) (absence of probable cause required element for Illinois malicious prosecution claim). Accordingly, all that remains in the complaint is the plaintiffs' unjust enrichment and indemnification theories. Unjust enrichment is not a separate cause of action in Illinois*, see Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 741 (7th Cir. 2017), and indemnification, like *Monell* liability, is merely a way to hold the city liable for the

actions of its employees. Because all the underlying claims against the defendants have been dismissed, there is no need to address those theories here.

* * *

For the reasons discussed above, the Court concludes that Mayo and Burt have failed to adequately state a claim against the defendants. The complaint is therefore dismissed. Further, because prevailing Circuit precedent dooms their Fourth Amendment claims, repleading the claims would be futile. The dismissal, therefore, is with prejudice.

Date: July 15, 2019

John J. Tharp, Jr.
United States District Judge